QUINTANA RACING PARK, INC., peticionaria y apelante, *v.* COMISIÓN HÍPICA INSULAR DE P. R. y sus miembros J. F. RICHARDSON, ANTONIO ARROYO, PEDRO JUAN BARBOSA, ENRIQUE GATELL y JOSÉ DÁVILA RICCI, demandados y apelados.

No. 5822.—*Sometido:* Junio 22, 1932. *Resuelto:* Julio 15, 1932.

*M. A. Martínez Dávila,* abogado de la apelante; *J. Martínez Dávila,* abogado de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto por la Quintana Racing Park, Inc., contra la sentencia de la Corte de Distrito de San Juan de 25 de agosto de 1931 que declaró no haber lugar a expedir el auto de *injunction* que la apelante le pidió que expidiera contra la Comisión Hípica Insular, a fin de que dicha Comisión no hiciera efectiva cierta multa que había impuesto a la apelante.

Los hechos se exponen con claridad y el derecho se aplica razonadamente en la relación del caso y opinión de la corte de distrito. Siendo ello así, nos parece apropiado transcribirla. Dice:

"El día 12 de abril del 1931 se celebraron carreras en el hipódromo Quintana y la corporación Quintana Racing Park, Inc., dueña.

de dicho hipódromo, en violación del art. 144 del Reglamento de la Comisión Hípica Insular de Puerto Rico destruyó los cuadros y papeletas usados en el juego de *pool* correspondientes a las carreras celebradas en dicha fecha antes de expirar el término de sesenta días prescrito en el art. 144 del Reglamento antes citado.

"El artículo 144 del Reglamento de la Comisión Hípica Insular de Puerto Rico dispone lo siguiente:

" 'Art. 144. La Corporación, sociedad o dueño del hipódromo deberá guardar bajo llave durante un período mínimo de sesenta días los cuadros y papeletas que no resultaren premiados, conservándolos en el mismo estado en que se extrajeron de las urnas en el día en que se verificó el escrutinio.'

"Con fecha anterior al 26 de mayo de 1931, la Comisión Hípica Insular de Pto. Rico requirió a Quintana Racing Park Inc. para que expusiera razones por las cuales no debía ser castigada por violación del art. antes citado y el día 26 de mayo compareció la ahora demandante y luego de exponer las razones que estimó procedentes, la Comisión le impuso una multa de $1,000. Con fecha 30 del mismo mes la ahora demandante solicitó reconsideración de dicha resolución y celebrada la vista de su moción ante la Comisión demandada, ésta reconsideró su resolución y dictó otra en 15 de junio último, imponiéndole a la demandante una multa de $200.00, en vez de $1,000.00 que antes le había impuesto, resolución que fué notificada a la ahora demandante con fecha 16 de junio último.

"La demandante, Quintana Racing Park Inc., ha radicado ante esta Corte una solicitud de *Injunction* para impedir que la Comisión demandada realice el cobro de la referida multa o ejecute su resolución de 15 de junio último por la que le impuso la multa de $200 de que antes se ha hecho referencia y como fundamento de su solicitud de *Injunction* alega que el art. 144 del Reglamento antes citado es nulo por carecer la Comisión de facultades para dictar reglas sobre materias que no se relacionen con la celebración de carreras de caballos en el hipódromo el día de las carreras.

"La Comisión Hípica contestó la demanda por la que virtualmente acepta los hechos alegados en la misma, pero sostiene que el art. 144 de su Reglamento es válido y que tiene facultades para dictar Reglamentos sobre la materia en cuestión.

"La parte demandante funda su contención en que el art. 4 de la ley hípica aprobada en 1925, dice así:

" 'La Comisión Hípica Insular estará facultada para prescribir las reglas y condiciones por las cuales deba regirse la celebración de carreras en Puerto Rico, incluyendo todo aquello que se relacione

con la forma en que deberán hacerse las apuestas en las bancas alemanas y *pools*, y todo lo que se relacione con la inscripción de caballos en el *studbook*.'

" 'Se faculta además a la Comisión Hípica Insular para imponer aquellas correcciones que creyere convenientes por infracciones de su reglamento sobre carreras de caballos.'

"Y alega la demandante que dicho art. 4 que vino a ser el 5 de la Ley Hípica de 1927 eliminó del art. 4 antes citado la frase:

" 'Incluyendo todo aquello que se relacione con la forma en que deberán hacerse las apuestas en las bancas alemanas y *pools*.'

"Quedando el art. 5 de la Ley de 1927 redactado en la forma siguiente:

" 'La Comisión Hípica Insular estará facultada para prescribir el Reglamento por el cual deberá regirse la celebración de carreras en los hipódromos y será puesto en vigor previa aprobación del Gobernador de Puerto Rico, y sin perjuicio de que sea revisado o revocado por la Asamblea Legislativa de Puerto Rico.

" 'La Comisión Hípica Insular dictará reglas para regular los contratos entre los dueños de caballos y *jockeys*.'

"Esta modificación del art. 4 de la Ley de 1925 la interpreta la demandante en el sentido de que la Comisión Hípica Insular carece ahora de facultades para dictar reglamentos sobre todo aquello que no se refiera a la celebración de carreras en los hipódromos el día de las carreras.

"No estamos conformes con la interpretación que da la demandante a dicho art. 5 de la Ley Hípica, pues si alguna duda hubiere sobre las facultades que para dictar reglas sobre la materia tiene la Comisión Hípica, esta duda se desvanece tan pronto se examina la sección 49 de la Ley Hípica de 1927, que dice así:

" 'Art. 49. Todos los establecimientos para la conservación y explotación del negocio de venta de billetes de apuestas en la forma conocida por *pool*, bancas alemanas o *pari-mutuel* y la formación de libros de apuestas cuyo funcionamiento es permitido por las disposiciones de esta ley, estarán abiertos en todo tiempo a la inspección de la Comisión Hípica Insular; cualquier transacción que en relación con las mismas no fuere efectuada de acuerdo con los reglamentos promulgados por la Comisión Hípica Insular, será ilegal y será prohibida por dicha Comisión, y establecida la culpabilidad de la persona responsable de dicha transacción ante un tribunal competente, los utensilios utilizados en relación con la misma serán confiscados y destruídos por orden de la Corte.'

"En relación con esta cuestión es conveniente tener en cuenta las disposiciones de los arts. 17 y 18 del Código Civil que dicen así:

" 'Art. 17. Las leyes que se refieren a la misma materia o cuyo objeto sea el mismo, deben ser interpretadas refiriendo las unas a las otras, por cuanto lo que es claro en uno de sus preceptos puede ser tomado para explicar lo que resulte dudoso en otro.

" 'Art. 18. El medio más eficaz y universal para descubrir el verdadero sentido de una ley cuando sus expresiones son dudosas, es considerar la razón y espíritu de ella o la causa o motivo que indujeron al poder legislativo a dictarla.'

"Del art. 49 antes citado aparece claramente que los establecimientos para la conservación y explotación del negocio de venta de billetes de apuestas, bancas alemanas, etc., *estarán abiertos en todo tiempo a la inspección de la Comisión Hípica Insular* y aparece también claramente la facultad concedida a la Comisión para dictar reglamentos sobre la materia cuando dice:

" 'Cualquier transacción que en relación con las mismas no fuere efectuada de acuerdo con los reglamentos promulgados por la Comisión Hípica Insular será ilegal y será prohibida por dicha comisión, etc.'.

"De modo que si la Comisión tiene el deber de inspeccionar dichos establecimientos y puede legislar en relación con los mismos no hay duda alguna que para cumplir los deberes que se le imponen tiene derecho de exigir que los billetes de apuestas y cuadros se conserven sin destruirse por un término de sesenta días, de modo que la Comisión dentro de dicho término pueda verificar cualquier inspección que fuere necesaria en relación con dichos documentos. Es éste un medio razonable que tiene la Comisión para poder llevar a efecto y cumplir debidamente el deber que le impuso el art. 49 de la Ley Hípica Insular.

"En cuanto a la facultad de la Comisión para imponer correcciones y castigos por infracciones de su reglamento, expresamente le concede tal facultad al art. 6 de la Ley Hípica Insular."

Invoca el apelante para sostener la ausencia de facultades de la Comisión, la actuación de la Legislatura eliminando de la sección 4, las palabras a que se refiere la propia corte sentenciadora, y la decisión de esta Corte Suprema en el caso de *Porto Rico Racing Corp.* v. *Comisión Hípica,* 38 D.P.R.

280, que contiene una historia completa de las leyes sobre carreras de caballos en esta Isla y un detenido estudio de los poderes de la Comisión, y que llega a la siguiente conclusión:

"Dos tendencias paralelas pueden notarse más o menos claramente en las leyes sucesivas que antes hemos mencionado. La primera, y tal vez la más obvia de las dos, es la creciente disposición de regularizar y reglamentar directa y detalladamente el negocio de hipódromos por medio de disposiciones estatutarias específicas que cubren el más mínimo aspecto del negocio. La segunda y concomitante fase de esa proposición general en la política legislativa es una inclinación aparente de cercenar las facultades de la Comisión Hípica Insular."

Si no existiera en la ley el artículo 49, quizá tendría razón el apelante. Habiendo en consideración lo eliminado de la sección 4 a la luz de las tendencias notadas en la opinión de esta corte en el caso que acaba de citarse, habría que resolver que la Legislatura había cercenado en la ley de 1927 la facultad que antes otorgara a la Comisión sobre la materia.

Pero la propia Legislatura impuso a la Comisión el deber de inspeccionar todos los establecimientos para la conservación y explotación del negocio de venta de billetes de apuestas y expresamente ordenó que *dichos establecimientos estarían abiertos en todo tiempo a dicha inspección.* E hizo más, dispuso que cualquier transacción que en relación con las apuestas fuere efectuada en dichos establecimientos *en contravención a los reglamentos promulgados por la Comisión, sería ilegal.* No importa que en la propia sección 39 dijera que la culpabilidad de la persona responsable se establecería ante un tribunal competente. El precepto reglamentario de que se trata se dictó para poder cumplir la Comisión plenamente su deber de inspección y estar en condiciones de investigar y establecer la culpabilidad, si existiere, de cualquier persona que violara la ley o sus reglas de acuerdo con ella promulgadas. El período fijado para la guarda de cuadros y papeletas premiados, parece razonable. La penalidad por la infracción de la regla independientemente de la penalidad que pudiera imponer la corte competente por la ilegalidad come-

tida investigada por la Comisión y por ella establecida ante la corte, está autorizada por la sección 6 de la ley de 1927.

*Debe confirmarse la sentencia recurrida.*